# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| ERIC SWINTOSKY and \* <br> HEATHER SWINTOSKY, as \* <br> parents and natural guardians of \* <br> their daughter, C.M.S., \* <br> \* <br> Petitioners, \* <br> \* <br> v. \* <br> \* <br> SECRETARY OF HEALTH \* <br> AND HUMAN SERVICES, \* <br> \* <br> Respondent. \* | No. 12-403V <br> Special Master Christian J. Moran <br><br> Filed: December 19, 2016 <br><br> Stipulation; influenza ("flu"); <br> acute hemorrhagic <br> leukoencephalomyelitis ("AHLE"). |

* * * * * * * * * * * * * * * * * * * *

Anne Carrion Toale, Maglio Christopher and Toale, PA, Sarasota, FL, for Petitioner;
Claudia B. Gangi, U.S. Dep't of Justice, Washington, DC, for Respondent.

**UNPUBLISHED DECISION**[1]

On December 15, 2016, the parties filed a joint stipulation concerning the petition for compensation filed by Eric and Heather Swintosky, as parents and natural guardians of their daughter C.M.S., on June 22, 2012. In their petition, petitioners allege that the influenza ("flu") vaccine, which is contained in the Vaccine Injury Table, 42 C.F.R. §100.3(a), and which C.M.S. received on September 9, 2009, caused her to suffer a stroke and develop acute hemorrhagic leukoencephalomyelitis ("AHLE"). Petitioners further allege that C.M.S. experienced residual effects of this injury for more than six months. Petitioners

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

represent that there has been no prior award or settlement of a civil action for damages on behalf of C.M.S. as a result of her condition.

Respondent denies that C.M.S. suffered a stroke or developed AHLE as a result of her immunization and denies that the flu vaccine caused her any other injury.

Nevertheless, the parties agree to the joint stipulation, attached hereto. The undersigned finds said stipulation reasonable and adopts it as the decision of the Court in awarding damages, on the terms set forth therein.

Damages awarded in that stipulation include:

a. **A lump sum of $617,027.40, which amount represents compensation for first year life care expenses ($206,402.40) and trust seed funds ($410,625.00), in the form of a check payable to Counsel Trust Company, as trustee of the grantor reversionary trust established for the benefit of C.M.S.;**

b. **A lump sum of $1,089,257.36, which amount represents compensation for lost future earnings ($839,257.36) and pain and suffering ($250,000.00), in the form of a check payable to petitioners as guardian(s)/conservator(s) of the estate of C.M.S. for the benefit of C.M.S. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as guardian(s)/conservator(s) of C.M.S.'s estate;**

c. **A lump sum payment of $4,779.49, which amount represents compensation for past reimbursable expenses, in the form of a check payable to petitioners, Eric Swintosky and Heather Swintosky; and**

d. **A lump sum of $50,728.71, which amount represents reimbursement of a lien for services rendered on behalf of C.M.S., in the form of a check payable jointly to petitioners and**

> **Commonwealth of Pennsylvania**
> **Department of Human Services**
> **Division of Third Party Liability**

Recovery Section
P.O. Box 8486
Harrisburg, PA 17105-8486
Attn: Barbara Witmer
CIS No: 990624514

**Petitioners agree to endorse this payment to the Commonwealth of Pennsylvania.**

e. **An amount sufficient to purchase the annuity contract described in paragraph 10 of the stipulation, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").**

In the absence of a motion for review filed pursuant to RCFC, Appendix B, the clerk is directed to enter judgment in case 12-403V according to this decision and the attached stipulation.[2]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[2] Pursuant to Vaccine Rule 11(a), the parties can expedite entry of judgment by each party filing a notice renouncing the right to seek review by a United States Court of Federal Claims judge.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| ERIC and HEATHER SWINTOSKY, as ) <br> Parents and Natural Guardians of their ) <br> Daughter, C.M.S., ) <br> ) <br> Petitioners, ) <br> v. ) <br> ) <br> SECRETARY OF HEALTH AND HUMAN ) <br> SERVICES, ) <br> ) <br> Respondent. ) | No. 12-403V <br> Special Master Moran <br> ECF |

## STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of their daughter, C.M.S, petitioners filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to -34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to C.M.S.'s receipt of the flu vaccine, which vaccine is contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. C.M.S. received her immunization on or about September 19, 2009.

3. The vaccine was administered within the United States.

4. Petitioners allege that C.M.S. suffered a stroke and developed acute hemorrhagic leukoencephalomyelitis ("AHLE") as a result of her immunization. Petitioners further allege that C.M.S. experienced residual effects of this injury for more than six months.

5. Petitioners represent that there has been no prior award or settlement of a civil action for damages on behalf of C.M.S. as a result of her condition.

6. Respondent denies that C.M.S. suffered a stroke or developed AHLE as a result of her immunization and denies that the flu vaccine caused her any other injury.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioners have filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

> a. A lump sum of $617,027.40, which amount represents compensation for first year life care expenses ($206,402.40) and trust seed funds ($410,625.00), in the form of a check payable to Counsel Trust Company, as trustee of the grantor reversionary trust established for the benefit of C.M.S.;
>
> b. A lump sum of $1,089,257.36, which amount represents compensation for lost future earnings ($839,257.36) and pain and suffering ($250,000.00), in the form of a check payable to petitioners as guardian(s)/conservator(s) of the estate of C.M.S. for the benefit of C.M.S. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as guardian(s)/conservator(s) of C.M.S.'s estate;
>
> c. A lump sum of $4,779.49, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioners, Eric Swintosky and Heather Swintosky;
>
> d. A lump sum of $50,728.71, which amount represents reimbursement of a lien for services rendered on behalf of C.M.S., in the form of a check payable jointly to petitioners and

Commonwealth of Pennsylvania
Department of Human Services
Division of Third Party Liability
Recovery Section
P.O. Box 8486
Harrisburg, PA 17105-8486
Attn: Barbara Witmer
CIS No: 990624514

Petitioners agree to endorse this payment to the Commonwealth of Pennsylvania.

    e. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

    a.    A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

    b.    Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

    c.    Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

    d.    Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of C.M.S., pursuant to which the Life Insurance Company will agree to make payments periodically to the trustee for the following items of compensation:

    a. For future unreimbursable Affordable Care Act Premium expenses, beginning on the first anniversary of the date of judgment, an annual amount of $3,240.00 to be paid up to the anniversary of the date of judgment in year 2026. Then, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $5,100.00 to be paid up to the anniversary of the date of judgment in year 2030. Then, on the anniversary of the date of judgment in year 2030, a lump sum of $5,124.00. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $5,220.00. Then, on the anniversary of the date of judgment in year 2032, a lump sum of $5,352.00. Then, on the anniversary of the date of judgment in year 2033, a lump sum of $5,544.00. Then, on the anniversary of the date of judgment in year 2034, a lump sum of $5,712.00. Then, on the anniversary of the date of judgment in year 2035, a lump sum of $5,796.00. Then, on the anniversary of the date of judgment in year 2036, a lump sum of $5,916.00. Then, on the anniversary of the date of judgment in year 2037, a lump sum of $6,036.00. Then, on the anniversary of the date of judgment in year 2038, a lump sum of $6,108.00. Then, on the anniversary of the date of judgment in year 2039, a lump sum of $6,192.00. Then, on the

anniversary of the date of judgment in year 2040, a lump sum of $6,240.00. Then, on the anniversary of the date of judgment in year 2041, a lump sum of $6,726.00, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

b. For future unreimbursable Medicare Part B Premium, Medicare Part B Deductible, and Medicare Part D expenses, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $4,914.70 to be paid for the remainder of C.M.S.'s life, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

c. For future unreimbursable Medigap expenses, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $1,458.00 to be paid up to the anniversary of the date of judgement in year 2070. Thereafter, beginning on the anniversary of the date of judgment in year 2070, an annual amount of $2,580.84 to be paid for the remainder of C.M.S.'s life, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

d. For future unreimbursable Primary Care Physician, Neurology, Ophthalmologist, Endocrinology, Gastroenterology/Nutritionist, Orthopedist, Emergency Room, Banzel, Zonisamide, and Diastat expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,899.00 to be paid up to the second anniversary of the date of judgment. Then, beginning on the second anniversary of the date of judgment, an annual amount of $2,849.00 to be paid up to the anniversary of the date of judgment in year 2022. Then, on the anniversary of the date of judgment in year 2022, a lump sum of $2,824.00. Then, on the anniversary of the date of judgment in year 2023, a lump sum of $2,811.50. Then, beginning on the anniversary of the date of judgment in year 2024, an annual amount of $2,761.50 to be paid up to the anniversary of the date of judgment in year 2041. Then, on the anniversary of the date of judgment in year 2041, a lump sum of $2,699.00, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

e. For future unreimbursable Primary Care Physician Mileage, Neurology Mileage, Ophthalmologist Mileage, Endocrinology Mileage, Gastroenterology Mileage, Orthopedist Mileage, Behaviorist Mileage, Physical Therapy Mileage, Occupational Therapy Mileage, Speech Therapy Mileage, and Camp Mileage expenses, beginning on the first anniversary of the date of judgment, an annual amount of $509.96 to be paid up to the second anniversary of the date of judgment. Then, beginning on the second anniversary of the date of judgment, an annual amount of $410.40 to be paid up to the anniversary of the date of judgment in year 2022. Then, on the anniversary of the date of judgment in year 2022, a lump sum of $397.10. Then, on the anniversary of the date of judgment in year 2023, a lump sum of $390.45. Then, on the anniversary of the date of judgment in year 2024, a lump sum of $358.53. Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $323.95 to be paid up to the anniversary of the date of judgment in year 2041.

-4-

Then, on the anniversary of the date of judgment in year 2041, a lump sum of $289.37. Then, on the anniversary of the date of judgment in year 2042, a lump sum of $310.65. Thereafter, beginning on the anniversary of the date of judgment in year 2043, an annual amount of $300.01 to be paid for the remainder of C.M.S.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

f.  For future unreimbursable Behaviorist expenses, beginning on the first anniversary of the date of judgment, an annual amount of $350.00 to be paid up to the anniversary of the date of judgment in year 2024, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

g.  For future unreimbursable Care Management expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,580.00 to be paid up to the anniversary of the date of judgment in year 2025. Then, on the anniversary of the date of judgment in year 2025, a lump sum of $7,740.00. Thereafter, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $5,160.00 to be paid for the remainder of C.M.S.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

h.  For future unreimbursable Vitamin D, Melatonin, Miralax, and Benefiber expenses, beginning on the first anniversary of the date of judgment, an annual amount of $125.94 to be paid for the remainder of C.M.S.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

i.  For future unreimbursable Diaper, Glove, Wipe, Disposable Underpad, and Washable Underpad expenses, beginning on the first anniversary of the date of judgment, an annual amount of $4,137.70 to be paid for the remainder of C.M.S.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

j.  For future unreimbursable Physical Therapy and Occupational Therapy expenses, beginning on the first anniversary of the date of judgment, an annual amount of $600.00 to be paid up to the anniversary of the date of judgment in year 2042, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

k.  For future unreimbursable Therapy Equipment, Augmentative Communication, and Walking Stick expenses, beginning on the first anniversary of the date of judgment, an annual amount of $850.00 to be paid up to the second anniversary of the date of judgment. Thereafter, beginning on the second anniversary of the date of judgment, an annual amount of $600.00 to be paid for the remainder of C.M.S.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

l.  For future unreimbursable Speech Therapy expenses, beginning on the first anniversary of the date of judgment, an annual amount of $625.00 to be paid up to the

second anniversary of the date of judgment. Then, beginning on the second anniversary of the date of judgment, an annual amount of $325.00 to be paid up to the anniversary of the date of judgment in year 2025. Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $162.50 to be paid up to the anniversary of the date of judgment in year 2041. Then, on the anniversary of the date of judgment in year 2042, a lump sum of $600.00. Thereafter, beginning on the anniversary of the date of judgment in year 2043, an annual amount of $300.00 to be paid for the remainder of C.M.S.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

m. For future unreimbursable Special Needs Camp expenses, beginning on the first anniversary of the date of judgment, an annual amount of $625.00 to be paid up to the anniversary of the date of judgment in year 2024. Thereafter, beginning on the anniversary of the date of judgment in year 2024, annual amount of $750.00 to be paid for the remainder of C.M.S.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

n. For future unreimbursable Stroller/Wheelchair and Shower Transfer Chair expenses, on the anniversary of the date of judgment in year 2020, a lump sum of $2,675.00. Then, on the anniversary of the date of judgment in year 2023, a lump sum of $181.80. Then, on the anniversary of the date of judgment in year 2025, a lump sum of $2,675.00. Then, on the anniversary of the date of judgment in year 2030, an annual amount of $2,856.80. Then, on the anniversary of the date of judgment in year 2035, a lump sum of $2,675.00. Then, on the anniversary of the date of judgment in year 2036, a lump sum of $535.00. Then, on the anniversary of the date of judgment in year 2037, a lump sum of $716.80. Thereafter, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $560.97 to be paid for the remainder of C.M.S.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

o. For future unreimbursable Attendant Care (School Days and Non-School Days), beginning on the first anniversary of the date of judgment, an annual amount of $100,700.00 to be paid up to the anniversary of the date of judgment in year 2027, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

p. For future unreimbursable Live-in Attendant Care/Residential Care expenses, beginning on the anniversary of the date of judgment in year 2027, an annual amount of $82,125.00 to be paid up to the anniversary of the date of judgment in year 2060. Thereafter, beginning on the anniversary of the date of judgment in year 2065, an annual amount of $82,125.00 to be paid for the remainder of C.M.S.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

    q. For future unreimbursable Ancillary Service (Housekeeping) expenses, beginning on the anniversary of the date of judgment in year 2027, an annual amount of $1,638.00 to be paid for the remainder of C.M.S.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

    r. For future unreimbursable Accessible Van expenses, on the anniversary of the date of judgment in year 2023, a lump sum of $10,000.00. Then, on the anniversary of the date of judgment in year 2030, a lump sum of $10,000.00. Thereafter, beginning on the anniversary of the date of judgment in year 2031, an annual amount of $1,428.57 to be paid for the remainder of C.M.S.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the trustee in monthly, quarterly, annual or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the trustee and do not require that the payment be made in one annual installment. The trustee will continue to receive the annuity payments from the Life Insurance Company only so long as C.M.S. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, the trustee, and the Life Insurance Company shall be provided within twenty (20) days of C.M.S.'s death.

    11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

-7-

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioners have filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioners and their attorney represent that they have identified to respondent all known sources of payment for items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), including State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees, and litigation costs, and past unreimbursable expenses, the money provided pursuant to this Stipulation either immediately or as part of the annuity contract, will be used solely for the benefit of C.M.S., as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioners represent that they presently are, or within 90 days of the date of judgment will become, duly authorized to serve as guardian(s)/conservator(s) of C.M.S.'s estate under the laws of the Commonwealth of Pennsylvania. No payments pursuant to this Stipulation shall be made until petitioners provide the Secretary with documentation establishing their appointment as guardian(s)/conservator(s) of C.M.S.'s estate. If petitioners are not authorized by

a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of C.M.S. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of C.M.S. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioners, in their individual capacities and as legal representatives of C.M.S., on behalf of themselves, C.M.S., and her heirs, executors, administrators, successors or assigns, do forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300 aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of C.M.S. resulting from, or alleged to have resulted from the flu vaccination administered on or about September 19, 2009, as alleged by petitioners in a petition for vaccine compensation filed on or about June 22, 2012 in the United States Court of Federal Claims as petition No. 12-403V.

18. If C.M.S. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties'

settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioners hereby authorize respondent to disclose documents filed by petitioners in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that C.M.S. suffered a stroke or developed AHLE as a result of her flu immunization or that her current condition is a sequelae of her alleged injury or any other vaccine injury.

23. All rights and obligations of petitioners hereunder shall apply equally to petitioners' heirs, executors, administrators, successors, and/or assigns as legal representatives of C.M.S.

END OF STIPULATION

Respectfully submitted,

PETITIONER:

*/s/ Eric Swintosky*
ERIC SWINTOSKY

PETITIONER:

*/s/ Heather Swintosky*
HEATHER SWINTOSKY

ATTORNEY OF RECORD FOR PETITIONERS:

*/s/ Anne Carrión Toale*
ANNE CARRIÓN TOALE, ESQ.
MAGLIO, CHRISTOPHER & TOALE
1605 Main Street, Suite 710
Sarasota, FL 34236
(888) 952-5242

AUTHORIZED REPRESENTATIVE OF THE ATTORNEY GENERAL:

*/s/ Catharine E. Reeves*
CATHARINE E. REEVES
Acting Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

AUTHORIZED REPRESENTATIVE OF THE SECRETARY OF HEALTH AND HUMAN SERVICES:

*/s/ Narayan Nair*
NARAYAN NAIR, M.D.
Director, Division of Injury
Compensation Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 08N146B
Rockville, MD 20857

ATTORNEY OF RECORD FOR RESPONDENT:

*/s/ Claudia B. Gangi*
CLAUDIA B. GANGI
Senior Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-4138

Dated: 12-15-16

-11-