# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
ERIC SWINTOSKY and  \*
HEATHER SWINTOSKY,  \*
as parents and natural guardians of  \*   No. 12-403V
their daughter, C.M.S.,  \*   Special Master Christian J. Moran
  \*
        Petitioners,  \*
  \*   Filed: November 6, 2017
v.  \*
  \*
SECRETARY OF HEALTH  \*   Attorneys' fees and costs; waiver
AND HUMAN SERVICES,  \*
  \*
        Respondent.  \*
* * * * * * * * * * * * * * * * * * * *

Anne C. Toale, Maglio Christopher & Toale, PA, Sarasota, FL, for petitioner;
Claudia B. Gangi, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]**

    Eric and Heather Swintosky (the "Swintoskys") received compensation through the Vaccine Program. They now seek an award of attorneys' fees and costs. The Secretary did not challenge any amounts requested. Due to the lack of objection from the Secretary, the Swintoskys are awarded their full request.

**I.  Procedural History**

    In their petition, the Swintoskys alleged that the influenza ("flu") vaccine received by their daughter, C.M.S., caused her to suffer a stroke and develop acute

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

hemorrhagic leukoencephalomyelitis. The Swintoskys gathered and filed medical records.

The respondent's Rule 4 Report argued against awarding compensation because the Swintoskys had not presented a medical theory linking the flu vaccine to the type of injuries suffered by C.M.S. nor had they offered a logical sequence of cause and effect showing that the flu vaccine was the reason for C.M.S.'s injuries. In presenting his view, the Secretary noted that the Swintoskys had not obtained a report from an expert.

The undersigned proposed instructions that would treat all expert reports as the direct testimony of the respective expert. The Swintoskys' counsel, Anne Toale, researched this issue, see exhibit 118 at 9 (attorney timesheets), and objected to the instructions as unduly limiting counsel's participation in the preparation of the expert reports and depriving the Swintoskys of the opportunity to present their experts' oral testimony. See Pet'rs' Status Rep., filed Aug. 7, 2013.

The Swintoskys eventually filed expert reports from Dr. John Gaitanis and Dr. Lori Jordan, and consulted with Dr. Rohit Bakshi. Exhibits 18, 62, 84, 105, and 119 at 2, 5 (payment to Dr. Bakshi). Respondent filed expert reports from Dr. Gregory Holmes. Exhibits A, Z, BB, and CC.

On December 15, 2016, the parties filed a joint stipulation to resolve the case. The undersigned then issued a decision awarding compensation. Because the Swintoskys received compensation, they are entitled to an award of attorneys' fees and costs. 42 U.S.C. § 300aa-15(e).

The Swintoskys filed the pending request for attorneys' fees and costs on May 2, 2017. Consistent with a previous decision from a special master, the Swintoskys proposed that their attorneys be compensated at the rate prevailing in the forum (Washington, DC), rather than the rate prevailing where they work (Sarasota, FL). Dezern v. Sec'y of Health & Human Servs., No. 13-643V, 2016 WL 6678496 (Fed. Cl. Spec. Mstr. Oct. 14, 2016). The Swintoskys requested $102,353.20 in total attorneys' fees and $51,743.86 in costs, including experts. As for the experts specifically, Dr. Gaitanis charged $18,900 ($400/hr. for 47.25 hours), Dr. Jordan charged $5,500 ($500/hr.[2] for 10.5 hours), and Dr. Bakshi

---

[2] The 10/12/2015 entry of Dr. Jordan's billing statement lists her hourly rate as $600 rather than $500, as it is listed for every other date entry on the statement. See exhibit 119 at 10.

charged $4,500 ($1,500/hr. for 3 hours). To support their motion, the Swintoskys filed invoices detailing attorney hours, invoices and receipts detailing costs, a statement regarding General Order #9, billing statements from experts, and affidavits from the attorneys and paralegals who billed time.

The Secretary filed a response to the Swintoskys' motion for attorneys' fees and costs. The Secretary stated that the statutory prerequisites for an award of attorneys' fees and costs have been met in this case, but does not engage in an analysis of the reasonableness of the award. Resp't's Resp. at 2. Without making any specific objections to the requested fees and costs, the Secretary only "recommends that the Special Master exercise his discretion and determine a reasonable award for attorneys' fees and costs." Id. at 3.

In their reply, the Swintoskys generally defended the amounts requested. In addition, the Swintoskys objected to the stance that respondent took. Citing 42 U.S.C. § 300aa-15(e), the Swintoskys argued that respondent should participate in the process of resolving this type of compensation (attorneys' fees and costs) just as respondent participates in the process for resolving other types of compensation, such as damages. The Swintoskys further argued that when respondent does not present evidence regarding attorneys' fees, "the Court may properly consider the fees and costs to be unopposed and grant them without further analysis." Pet'rs' Reply at 2.

Respondent was directed to respond to the Swintoskys' reply. Order, issued June 22, 2017. In his brief, the Secretary maintained that neither the Vaccine Act nor the Vaccine Rules contemplate any role for the respondent in the resolution of requests for attorneys' fees and costs, and that his deferral to the special master should not be construed as a waiver. Resp't's Br., filed July 11, 2017, at 9. Following the status conference on July 19, 2017, this matter is now ready for adjudication.

## II. Analysis

Initially, the roles of the government officials should be established as foundation. Congress determined that for claims in the Vaccine Program, the Secretary of Health and Human Services is always named as the respondent. 42 U.S.C. § 300aa-12(b)(1) ("In all proceedings brought by the filing of a petition …,

---

The $600 rate appears to be a typographical error because the total on the billing statement can be correctly calculated only by using the $500 rate for all of the hours listed in the date entries.

the Secretary shall be named as the respondent, shall participate, and shall be represented"). The Secretary, in turn, acts through officials at the Division of Injury Compensation Programs ("DICP") to evaluate vaccine petitions and medical records.[3]

Congress also specially appointed the Department of Justice to represent the Secretary "in all proceedings." § 300aa-12(b)(1) (citing the Department of Justice's duty to conduct suits in the Court of Federal Claims pursuant to 28 U.S.C. § 518(a)). "[A]ll proceedings" includes requests for attorneys' fees and costs pursuant to § 300aa-15(e).

The Secretary now states he fulfills the duty to "participate" by simply deferring to the special master's discretion. However, the lack of an objection from the Secretary places the special master in an awkward situation. According to the Swintoskys:

> The Court, if acquiescing to serving in the role of fees and costs inquisitor, may have issues or misperceptions regarding fees or costs. Unless the Court requests clarification from Petitioner before issuing a decision, which it is under no obligation to do, the Petitioner has no opportunity to address the issue or misperception.

Pet'rs' Reply at 2-3.

The Swintoskys' request that they have an opportunity to respond to specific objections is supported by case law. In a variety of contexts, courts have required that a party opposing a fee application present specific objections. In a consolidated appeal regarding FOIA and Title VII employment discrimination cases, the D.C. Circuit determined that "[o]nce the fee applicant has provided support for the requested rate, the burden falls on the Government to go forward with evidence that the rate is erroneous," Nat'l Ass'n of Concerned Veterans v.

---

[3] 5 U.S.C. § 301 (Secretary's power over the "distribution and performance of [HHS's] business"); 53 Fed. Reg. 49359 (Dec. 7, 1988) ("to reflect the establishment of the National Vaccine Injury Compensation Program" the Bureau of Health Professions adds "administers the National Vaccine Injury Compensation Program" to its functional statement); 54 Fed. Reg. 24427 (June 7, 1989) (within the Bureau of Health Professions, the Division of Quality Assurance and Liability Management is established and its functional statement includes "(10) evaluates petitions for compensation under the National Vaccine Injury Compensation Program (NVICP) through a medical review and assessment of compensability for all complete claim files").

Sec'y of Def., 675 F.2d 1319, 1326 (D.C. Cir. 1982), and later reiterated the same point in another consolidated appeal involving prisoner's rights, First Amendment rights, and disability rights cases. Covington v. District of Columbia, 57 F.3d 1101, 1109 (D.C. Cir. 1995). The Ninth Circuit stated in an immigration and habeas corpus case that the party opposing the fee application must present evidence to support its objections. Nadarajah v. Holder, 569 F.3d 906, 917 (9th Cir. 2009). Elsewhere, the Ninth Circuit described the fee opponent's obligation to submit evidence as a "burden of rebuttal." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992). In a forfeiture of property case involving a fee application, the Third Circuit reasoned that "[o]nly with proper notice can the [fee] claimant know which request to defend as reasonable." United States v. Eleven Vehicles, Their Equip. & Accessories, 200 F.3d 203, 212 (3d Cir. 2000). In a government contracts case, the Court of Federal Claims stated that after the fee seeker established reasonable fees by submitting evidence, the issue is whether the government can "rebut the presumption of reasonableness that attaches to [the established] billing rates." Sufi Network Servs., Inc. v. United States, 113 Fed. Cl. 140, 147 (2013), aff'd in relevant part, vacated in part, and remanded, 785 F.3d 585 (Fed. Cir. 2015). Although none of these cases interpreted the Vaccine Act, the Supreme Court has said that fee statutes should be interpreted similarly. CRST Van Expedited, Inc. v. E.E.O.C., 136 S. Ct. 1642, 1646 (2016) (interpreting "prevailing party" consistently across fee-shifting statutes); see also Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008).

Another example actually comes from the early days of the Vaccine Program. After the Secretary had not objected to an award of attorneys' fees and costs when the case was before a special master, the Court dismissed the Secretary's motion for review of a special master's award of attorneys' fees and costs. McMillan v. Sec'y of Health & Human Servs., 26 Cl. Ct. 357, 358 (1992). The Court found that the Government had waived its right to object to the attorneys' fees based on Vaccine Rule 8(f) and on the general rule of waiver resulting from a party's failure to object. Id.

The Secretary attempts to defend his failure to interpose any objection with various arguments beginning with the Vaccine Act and the Vaccine Rules. But, the Secretary has not offered a persuasive interpretation of the Vaccine Act. The Secretary observes that § 300aa-15(e) does not specifically prescribe a role for respondent in fee litigation. Resp't's Br. at 6-7. True enough. But, § 300aa-15(a), which generally defines the compensation available for C.M.S.'s adverse reaction to the vaccine, also mentions the Secretary only in the context of determining the average cost of a health insurance policy. The absence of language specifically

5

authorizing or requiring the Secretary to participate in the process of determining, for example, unreimbursed medical expenses, has not prevented the Secretary from engaging life care planners.

The Secretary also argues that Vaccine Rule 13 ("Attorney's Fees and Costs") does not mention a role for the Government in the application for attorneys' fees. Resp't's Br. at 5-7. This argument misses the point that a fee application, as a motion, is also governed by Vaccine Rule 20, which lays out general procedures and establishes deadlines for responses to motions. Thus, the silence in § 300aa-15(e) or in Vaccine Rule 13 on the Secretary's role does not excuse the Secretary from meeting an obligation to present meaningful arguments.

Apart from an attempt to find a textual ambiguity in section 15 and Vaccine Rule 13, the Secretary offers three other arguments / observations. First, the Secretary comments that medical personnel at DVIC do not have expertise to comment on the reasonableness of fees. This distinction is flawed for two reasons. Initially, litigants in other fee-shifting regimes (such as an employer in a Title VII employment discrimination case) do not have expertise in attorneys' fees. Nonetheless, as the cases cited above show, the defendants-employers must respond to the fee application. Additionally, the respondent's argument ignores that the Department of Justice has institutional experience handling attorneys' fees applications in the Vaccine Program and across a variety of other fee-shifting regimes. Unlike other substantive issues that arise during litigation in the Vaccine Program, expertise in handling attorneys' fees applications lies with the attorney, not the client.

The Secretary's second argument to justify his decision not to interpose specific objections is a comment upon how some judicial officials have treated some objections. Without citing specific cases, the Secretary remarks that his objections to petitioners' fee applications have not been well-received by special masters. However, the Secretary's contributions have also been beneficial. See, e.g., E.S. by & through Sweatt v. Sec'y of Health & Human Servs., No. 15-1222V, 2017 WL 2417770, at *3 n.2 (Fed. Cl. Spec. Mstr. May 12, 2017) (noting that the Secretary's involvement assisted the special master in determining a reasonable hourly rate). Moreover, to the extent that the Secretary is disappointed in decisions, the Secretary has not exercised his right to appeal decisions. Examples of attorneys' fees cases in which the Secretary could have pursued an appeal include Guerrero v. Sec'y of Health & Human Servs., 120 Fed. Cl. 474 (2015), app. dismissed, No. 16-1753 (Fed. Cir. Apr. 22, 2016) and Masias v. Sec'y of Health & Human Servs., 106 Fed. Cl. 700 (2012).

The undersigned quickly acknowledges that judges at the Court of Federal Claims may uphold, set aside, or remand decisions by special masters. 42 U.S.C. § 300aa-12(e)(2)(A)-(C). In pointing out Guerrero and Masias, the undersigned is not suggesting that those cases were decided wrongly. Rather, the point of citing Guerrero and Masias is to demonstrate that the Government has an option to seek further review of outcomes in fee disputes but has not exercised its right to do so. By not seeking review in the Federal Circuit, the Government has contributed, at least in part, to the current state of litigation over attorneys' fees.

Third, in explaining why he is not presenting specific objections to the amounts requested, the Secretary complains about a lack of resources. Resp't's Br. at 8. How the Government (both HHS and DOJ) chooses to deploys its resources is a matter for officials within the Executive branch. But the undersigned, as a member of the Judicial branch, will not take up the job of the Executive branch. If the Executive branch officials determine that the best way of protecting the Trust Fund is not to object to the amounts of fees requested, then this decision is simply a consequence of that decision.

Under the circumstances in which respondent has been specifically informed that a failure to interpose some challenge to the amount requested could be interpreted as a waiver and respondent has declined to make any specific challenge, the undersigned will not reduce the amount requested sua sponte.

The undersigned acknowledges that finding the Secretary has waived any objections to attorneys' fees differs from the way the undersigned has usually adjudicated fee motions. The undersigned has acted, to borrow a phrase from the Switoskys, as a "fee inquisitor." See, e.g., Abbott v. Sec'y of Health & Human Servs., No. 10-485V, 2017 WL 2226614 (Fed. Cl. Spec. Mstr. Apr. 26, 2017), mot. for rev. denied, __ Fed. Cl. ___ (slip op. Oct. 31, 2017); but see Hodge by Elson v. Sec'y of Health & Human Servs., No. 09-453V, 2017 WL 2333626, at *2 (Fed. Cl. Spec. Mstr. May 3, 2017) (finding the Secretary waived any objection to the amount requested in costs). Several factors contribute to the undersigned's change in the method of analysis.

First, the undersigned is not aware of any Federal Circuit case that requires a judicial officer to challenge fee applications sua sponte. Further, the undersigned's decisions are not binding. Hanlon v. Sec'y of Health & Human Servs., 40 Fed. Cl. 625, 630 (1998), aff'd on nonrelevant ground, 191 F.3d 1344 (Fed. Cir. 1999). Thus, there appears to be no legal prohibition from changing practices.

Second, in their reply, the Swintoskys presented a cogent argument that the special master should treat their fee application as "unopposed." Pet'rs' Reply, filed May 12, 2017, at 2. After the Swintoskys raised the issue of potential waiver, the undersigned believed his duty as a judicial officer was to resolve the Swintoskys' argument. The undersigned discussed potential waiver with the Secretary in June 22, 2017 status conference, alerting the Secretary to a possible shift, and allowed the Secretary to file a written brief, which the Secretary did on July 11, 2017.

Third, the Secretary's decision to refrain from identifying specific problems in a fee application alters the triangular relationship among petitioners, the Secretary, and special masters. Although the Secretary stated in a July 19, 2017 status conference that the Government's "policy" was to determine its position about attorneys' fees on a case-by-case basis, the Government has not interposed any specific objections to the amount of fees requested in many months. See Edgar v. Sec'y of Health & Human Servs., 32 Fed. Cl. 506, 509 (1994) (special masters can use prior experience in reviewing fee applications). During this time, without the benefit of a meaningful response from the Secretary, the undersigned investigated fee applications. See, e.g., Anthony v. Sec'y of Health & Human Servs., No. 14-680V, 2016 WL 7733084, at *5-8 (Fed. Cl. Spec. Mstr. Dec. 15, 2016), mot. for reconsid. denied, 2017 WL 521746 (Fed. Cl. Spec. Mstr. Jan. 11, 2017), mot. for review dismissed (Fed. Cl. May 8, 2017). These investigations necessarily consumed judicial resources, which the increasing caseload in the Vaccine Program has made scarcer.[4] Time spent on fee applications cannot be spent on adjudicating claims for compensation.

While spending a great deal of time on fee applications, the undersigned simultaneously grew concerned that the undersigned's investigation did not allow for petitioners to defend their fee applications easily. Although special masters do possess the authority to resolve fee applications without seeking further input from petitioners, Savin ex rel. Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-17 (2008), the fairness of this approach seems to erode with repetition. It is one thing for special masters to adjust a fee application when the need for the special master's sua sponte intervention appears derived, at least in part, from an

---

[4] Because Congress stated that the Office of Special Masters "shall consist of not more than 8 special masters," 42 U.S.C. § 300aa-12(c)(1), the number of special masters has not increased in proportion to the increased number of cases.

accidental oversight. But, the situation is different when the Secretary intentionally follows a practice of not presenting objections.

The Secretary's deliberate choice not to object to amounts requested in fee applications combined with the Swintoskys' assertion that the Secretary has waived any objection prompts the undersigned's change in policy.[5] For these reasons, the undersigned finds that respondent has waived any objections to the amount of fees requested. Absent any objections, the Swintoskys' request for attorneys' fees and costs is GRANTED IN FULL.

Accordingly, the Court awards the following:

> **A lump sum of $154,097.06 in the form of a check made payable to petitioners and petitioners' attorney, Anne C. Toale, of Maglio Christopher & Toale, PA.**

This sum represents reimbursement for attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e). In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court shall enter judgment in accordance herewith.[6]

Any questions regarding this order may be directed to my law clerk at (202) 357-6360.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[5] As pointed out above, a special master's decision does not establish a precedent that binds the special master who issued the decision, let alone another special master. All special masters retain the discretion to evaluate fee applications sua sponte. However, absent any contrary appellate guidance, the undersigned expects to follow this decision in reviewing future fee applications and the Secretary's response to them.

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.